IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DEBORAH D.M., | CV 20–116–M–DWM |
| Plaintiff, | |
| v. | OPINION and ORDER |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits for lack of disability. 42 U.S.C. §§ 405(g), 1383(c)(3). The case is remanded so the ALJ can fully develop the record on Plaintiff's carpal tunnel syndrome.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Id.* (internal quotation marks omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation

1

marks omitted). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the ALJ. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

A claimant for disability benefits bears the burden of proving that disability exists. 42 U.S.C. § 423(d)(5). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled only if her impairments are so severe that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other substantial gainful activity in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In determining disability, the ALJ follows a five-step sequential evaluation process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v). The process

2

begins, at the first and second steps, "by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.* "If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functioning capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work." *Id.* At step five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1098. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

## BACKGROUND

On July 19, 2017, Plaintiff protectively filed an application for Supplemental Social Security Income disability benefits under Title XVI of the Social Security Act. 42 U.S.C. §§ 401–33; AR 148–49. She alleged disability beginning December 1, 2015. AR 148. Her claim was initially denied on October 25, 2017, AR 74–76, and upon reconsideration on February 7, 2018, AR 80–84. Plaintiff filed a written request for hearing, AR 86–87, which was held by video on May 3, 2019, by Administrative Law Judge ("ALJ") Richard A. Opp, *see* AR 33–50.

Plaintiff testified, as did vocational expert Bob G. Zadow. *See id.* Plaintiff was represented by counsel. *Id.*

On October 2, 2019, the ALJ issued a decision denying benefits. AR 18–27. At step one, the ALJ found Plaintiff engaged in "substantial gainful activity" in her position as a waitress from October 1, 2018 through May 7, 2019. AR 20–21. However, the ALJ concluded that there has been a continual 12-month period during which Plaintiff did not engage in substantial gainful activity, AR 21, and he therefore moved on to step two for that period. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, carpal tunnel syndrome, and obesity. *Id.* At step three, however, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

The ALJ determined Plaintiff had a residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), meaning

> [s]he can push, pull, lift, and carry 15 pounds occasionally and 5 pounds frequently. She can occasionally operate foot controls. She can occasionally work on ramps or stairs. She can never work on ladders, ropes or scaffold. She can occasionally balance, stoop, kneel, and crouch, but can never crawl. She can rarely reach overhead, not to exceed 10 times per workday. She can frequently reach to the side and front. She can frequently handle, finger, and feel. She must avoid concentrated exposure to vibration, extreme cold, unprotected heights, and working around hazardous moving machinery.

AR 21–22. Accordingly, at step four, the ALJ concluded that Plaintiff was unable

to perform her past relevant work as a server or deli worker.  AR 25.  Nevertheless, at step five, the ALJ relied on the vocational expert's testimony in determining that in light of Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [she] can perform," including production assembler, price maker and checker, and bench assembler. AR 26.  Accordingly, the ALJ determined that Plaintiff was not disabled.  AR 27.

On June 5, 2020, the Appeals Council denied Plaintiff's request for review, AR 1–6, making it a final decision.  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).  Proceeding *in forma pauperis*, (Docs. 1, 3), Plaintiff appealed that decision on August 4, 2020, (Doc. 2).  The Commissioner filed the certified administrative record on December 22, 2020.  (*See* Doc. 10.) The matter was fully briefed as of March 29, 2021.  (Docs. 13, 14, 15.)

ANALYSIS

Plaintiff presents two issues for judicial review: (1) whether the ALJ's RFC determination is supported by substantial evidence and (2) whether the ALJ failed to properly analyze Plaintiff's mental impairments.  Ultimately, the ALJ's RFC based on Plaintiff's carpal tunnel syndrome is not supported by substantial evidence, so the matter is remanded only on that narrow ground.

I.      RFC

A claimant's RFC is "the most [a claimant] can do despite [her] limitations".

20 C.F.R. § 416.945.  In formulating an RFC, an ALJ considers "all relevant evidence" in the claimant's case record.  § 416.945(a)(1).  As stated above, the ALJ determined Plaintiff has the RFC for light work.  *See* AR 21–22.  Plaintiff argues that "the ALJ made this RFC up out of thin air and is unqualified to do so as a lay person in a case of such medical significance."  (Doc. 13 at 16.)  Plaintiff is correct that an "ALJ may not act as his own medical expert, since he is simply not qualified to interpret raw medical data in functional terms."  *Karen E. v. Berryhill*, 2019 WL 1405835, at *3 (C.D. Cal. Mar. 27, 2019) (internal quotation marks omitted) (collecting cases).

In regard to Plaintiffs' neck and back pain, the ALJ determined that both the medical evidence and Plaintiff's "own activities and self-reports do not establish that she is as limited as alleged."  AR 22–25.  However, the ALJ rejected the functional findings from a September 2017 consultative physical examination by Kathleen Evans, M.D. as "not persuasive" because Plaintiff subsequently "had two spinal surgeries, including a fusion in the upper and lower spine."  AR 23. Additionally, the ALJ rejected prior administrative findings as to her functionality on the grounds that those assessments "did not adequately consider the claimant's subjective complaints or the cumulative effect of her symptoms, were not examining physicians and mental treatment providers, and did not have the full medical record before them for review," specifically Plaintiff's "two neck surgeries

6

and a lower back surgery." AR 25. The ALJ therefore rejected functionality

findings that he believed overstated her capabilities. *Cf. Johnson v. Shalala*, 60

F.3d 1428, 1436 n.9 (9th Cir. 1995) ("[O]verinclusion of debilitating factors is

harmless . . ..").

Instead, the ALJ considered the medical evidence in record and concluded

that while she could not function as assessed, the evidence fell short of Plaintiff's

alleged limitations. In doing so, the ALJ walked through Plaintiff's medical

history and spinal surgeries, indicating where the evidence showed that she had

either improved or continued to experience pain. *See* AR 23–24. Thus, the ALJ

provided evidentiary support for his interpretation of the medical evidence insofar

as his assessment of her neck and back pain. *See Rounds v. Comm'r of Soc. Sec.*

*Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for

translating and incorporating clinical findings into a succinct RFC.").

But the ALJ's assessment of Plaintiff's carpal tunnel is a closer question.

Unlike the ALJ in *Karen E.*, the ALJ here determined that carpal tunnel was a

severe impairment at step two, AR 21, and discussed how it affected her ability to

perform her job as a waitress during the administrative hearing, AR 40–42. *See*

2019 WL 1405835, at *4. He then considered this impairment in assessing

Plaintiff's RFC, reflecting on her "history of treatment for carpal tunnel syndrome"

and how it impacted her ability to "reach[] and perform[] manipulative activities."

7

*See* AR 24–25.  Nevertheless, the functional limitations of Plaintiff's carpal tunnel were not considered by Dr. Evans in her 2017 consultative exam, *see* AR 312–17, or by either state assessment, *see* AR 51–71.  And, the medical records pertaining to this impairment only discuss her symptoms and possible diagnosis; they do not include any opinions assessing Plaintiff's functional limitations.  *See* AR 449–51.  As a result, the ALJ was "forced to act as his own medical expert and translate the data himself, something he was not qualified to do."  *Karen E.*, 2019 WL 1405835, at *4 (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).  The ALJ therefore had a duty to develop the record further to allow for a "proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).  That is especially so here where the vocational expert opined that minute changes to "handling, fingering, [] feeling," and the ability to "reach[] to the side and the front" would "eliminate" listed jobs.  *See* AR 48–49.

In sum, the record was inadequate with respect to Plaintiff's carpal tunnel syndrome for the ALJ to properly determine her RFC.  Thus, the ALJ's RFC determination is not supported by substantial evidence.

## II.   Mental Impairments

At step two of a disability determination, "an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments" by "follow[ing] a special psychiatric review technique":

8

> Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, [20 C.F.R.] § 404.1520a(b), rate the degree of functional limitation for four functional areas, *id.* § 404.1520a(c), determine the severity of the mental impairment (in part based on the degree of functional limitation), *id.* § 404.1520a(c)(1), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder, *id.* § 404.1520a(c)(2).

*Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).  The first two levels of this technique are documented in a Psychiatric Review Technique Form, which must either be appended to the ALJ decision or incorporated into the findings.  *Id.* at 726.  Nevertheless, this analysis—and therefore the obligation to follow the technique—is triggered only if the claimant has presented a "colorable claim of mental impairment."  *Id.* (quoting *Guitierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000)).

Plaintiff argues that because she presented a colorable claim of mental impairment, the ALJ was required to follow the psychiatric review technique and erred by failing to do so.  In response, the government argues that: (1) the issue was not administratively exhausted so is therefore forfeited, and (2) even if was properly preserved, Plaintiff failed to make a threshold showing of a "colorable claim."  The government's second argument is persuasive.

The government first argues that this argument is forfeited because it was not raised at the administrative level and Plaintiff's application for disability was

based solely on her physical impairments.  In response, Plaintiff insists that her

mental health issues were presented to the ALJ through her hearing testimony in

which Plaintiff affirmed that she suffered from "anxiety, mood swings, [and]

depression," she was seeing a doctor and was on medication for those issues, and

they "[s]ometimes" kept her from working.  *See* AR 46–47.  Plaintiff further

argues that the record contains numerous references to her mental health.

 The government is correct that Plaintiff's "Disability Report" lists only 10

physical conditions that would limit her ability to work.  *See* AR 185.  However,

the "Medical Treatment" section of that same document indicates that she had seen

a doctor, received treatment, or had an appointment scheduled for both physical

and mental conditions.  *See* AR 188.  And, as Plaintiff described in her briefing,

the issue of her mental health was discussed at the administrative hearing.  *See* AR

46–47.  Claimants "must raise issues at their administrative hearings in order to

preserve them on appeal before th[e] Court."  *Meanel v. Apfel*, 172 F.3d 1111,

1115 (9th Cir. 1999).  Her failure to present the issue to the Appeals Council, *see*

AR 254–56, is not dispositive.  *See Sims v. Apfel*, 530 U.S. 103, 112 (2000)

("Claimants who exhaust administrative remedies need not also exhaust issues in a

request for review by the Appeals Council in order to preserve judicial review of

those issues.").  Accordingly, this argument has not been forfeited.

 But the record fails to present a colorable claim of mental impairment.  "A

colorable claim is one which is not wholly insubstantial, immaterial, or frivolous."

*Dykstra v. Barnhart*, 94 F. App'x 449, 450 (9th Cir. 2004) (quoting *McBride*

*Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 981 (9th Cir. 2002)).

　　First, as the government argued above, Plaintiff's disability claim was not

premised on a mental condition. *See* AR 51, 61, 185, 200, 207–08, 333. In fact, it

was the ALJ, not Plaintiff, who raised the issue at the administrative hearing. *See*

AR 46–47. Second, while the medical evidence shows that Plaintiff reported a

history of depression and mood disorder, *see* AR 272, 279, 285–86, 289–90, 294,

296, 323, 328, 338, 345, 357, 369, 374, 379, 401, 408, 429, 435, 438, 447, 449,

454, and has been on medication for these issues, *see* AR 297, 323, 338, 349, 353,

367, 373, 382, 408, 433, 439, 444, 454, those records are far from substantial.

Unlike the situation in *Dykstra*, where a psychologist evaluated the claimant, *see*

94 F. App'x at 450, none of Plaintiff's records are from a mental health provider.

*See* 20 C.F.R. § 416.921 (stating that a "mental impairment must be established by

objective medical evidence from an acceptable medical source"); *see* AR 47

(testifying that she has not seen "a psychiatrist, or a counselor, or therapist"). To

the contrary, almost all these references can be attributed to Plaintiff's self-

reporting of her own medical history. Additionally, much of the medical evidence

cited by Plaintiff pre-dates her alleged onset date, *see* AR 272–98; notes her

history of depression or mood disorder, but also notes a normal affect and mood,

11

*see* AR 346, 354, 357, 375, 380, 383, 409, 432, 436, 440, 446, 456; does not

mention her depression at all, *see* AR 389, 394, 418, 423; or states that it has been

controlled through medication, *see* AR 382.

Moreover, there is no indication from the record that Plaintiff's mental

health diagnoses or medication impacted her functional abilities. To the contrary,

Plaintiff's own function report indicates that her abilities are limited "because I'm

in so much pain" and the only conditions she identified were those regarding

physical function, such as lifting, standing, bending, reaching, walking, etc. *See*

AR 200. Notably, Plaintiff did not check a single box related to mental

functioning. *See id.* Moreover, she stated that she can pay attention "as long as I

need" and that she follows instructions "well." *See id.* She further indicated that

she gets along with others and handles changes in routine "pretty well." *See* AR

201. And, when asked if her mental health issues interfered with her ability to

work during the administrative hearing, her answer was far from definitive; rather,

she said "[s]ometimes" and that she generally "push[es] through it." AR 47.

Because the record does not demonstrate a colorable claim of mental

impairment, the ALJ was not required to comply with § 1520a.

## CONCLUSION

Remand is necessary to develop the record on Plaintiff's carpal tunnel

syndrome, making remand for further proceedings—as opposed to an award of

benefits—appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 595–96 (9th Cir.

2004). Accordingly, IT IS ORDERED that Plaintiff's request for remand is

GRANTED. The Commissioner's decision is REVERSED and this matter is

REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

proceedings consistent with this opinion. On remand, the ALJ is directed to

develop the record further with respect to Plaintiff's carpal tunnel syndrome,

including by retaining a medical expert to review the record or by ordering a

consultative examination. The ALJ should then consider all of Plaintiff's

impairments in reassessing her RFC and proceed through steps four and five to

determine what work, if any, she can perform.

DATED this _____ day of June, 2021.

Donald W. Molloy, District Judge
United States District Court